This case on today's docket is the people of the state of Illinois v. Ryan Mulvaney. We have, I'm sorry, your name is? What's your last name? I, H-A-I-N. H-A-I-N, E. You just put your first name down on the finance list. Throw it a little out there. Ms. Heim, you may proceed when you're prepared to do so. Ms. Stacey. May it please the court. Counsel. My name is Maggie Heim, and I represent the defendant, Mr. Ryan Mulvaney. Mr. Mulvaney was convicted after a direct, this is Mr. Mulvaney's direct appeal following a two-day jury trial. He was convicted of four counts of aggravated criminal sexual abuse, and these counts arose from the complaints of two young girls, his niece and a neighbor. Now, in the brief, we've raised two issues. The second issue is the misjoinder of the neighbor's complaint with the niece's complaint, and the first issue is the failure to grant a missed trial after the testimony referenced a polygraphic technician. Now, I'll be focusing on the polygraph issue because I think this type of error no longer arises very often, and it has some significant case law governing the remedy, particularly in a case like this where there was no confession and there's no physical evidence. But if there are questions as to either issue, I'm happy to take them. Now, polygraph evidence has been repeatedly condemned as unreliable in both Illinois and throughout the nation, and the problem isn't really limited to its lack of scientific reliability. It's also that polygraph evidence presents a special danger because laymen are overpersuaded by its effectiveness. Now, the Supreme Court in Taylor described this as the subtle and unconscious but at the same time potent effect. It occurs whether or not the juror is aware of it, and this is why the Illinois Supreme Court has strictly barred this evidence in criminal trials with the narrow exception where it's used to rebut a claim of a coerced confession, and I think there's also one for when the defendant's presenting it. If he claims that there's a denied a right to a fair trial, then there may need to be further analysis, but neither of those apply in this case. Now, in 2015, polygraphs are still used during police investigations, but the law is well settled that jurors can't be told this. Well, this wasn't actually evidence of a polygraph. It was just one word. It was one word, but... And it wasn't really at the question of the state. It was a nonresponsive answer, wasn't it? Well, I think that the state's question, they were asking about a very specific meeting at 1045 a.m. with Mark Murphy and Ryan Mulvaney, so if they were referring to something that referred to a polygraph being offered or actually given, then it was far more incumbent on them to make sure their witness knew, do not talk about the polygraph. Well, do you agree that it's an abuse of discretion standard? It is an abuse of discretion standard, and I think the trial court was put in a very difficult position when this testimony came out because obviously it's very inconvenient to have to start over at the end of a two-day trial, but I think the reality is the Supreme Court has spoken on this, and they've said polygraph evidence can be very damaging to criminal defendants, and jurors can't be trusted when they're allowed to speculate and infer that a polygraph was used during a police investigation or in making the decision to prosecute. So while I don't doubt the seriousness with which the trial court took this request for a mistrial, I think he underestimated the power that speculation about polygraphs has in a juror. I think in that way the court was bound to grant the mistrial because the evidence was close and because it was brought out by the state with no invitation from defense counsel. Can you give me a little back story on this? What did you understand was the purpose of the question about the conversation with the defendant? Well, I think if we look at—I'm not sure because it was cut off, but I think if you look to the rest of the testimony, which is printed in the state response brief, did you have a conversation with the defendant and Mark Murphy were present? No, Mark Murphy and I, the defendant, did not all speak together. Did you have a conversation with him where he told you he had to put his arm around the shoulder of KL? Yes, I did. I have a conversation with the defendant, the special agent, and then the prosecutor interrupts her again and says, all right, you've answered my question. So I think the purpose of this is he wanted to try to bring out the defendant's statement that he had put his arm around one of the girls, and this came out, I think, through a polygraph, which ended in another interview with the officers, but he knew that he had to do it without bringing up the polygraph evidence, and I think the prosecutor, you know, is trying on very dangerous territory and not ensuring that his witness knew we're going to go there, but you cannot say anything that insinuates a polygraph is what led to this statement. Because obviously he knows that the person that has this information is the polygraph agent. Well, so I think you had two special agents who were not the polygraph technician, and then you had the polygraph technician, and it sounds like what happened is you have special agent Finney who did an initial interview, and then you had a polygraph with Mark Murphy and maybe a different special agent, and then there was a follow-up interview with agent Finney and this other special agent. So, like, that's how the background facts work out. And, you know, the prosecutor seemingly didn't remember who was in which interview when he asked the question, but no matter who was in the interview, if he was going to go into this territory where you're talking about a statement elicited from a polygraph exam, you need to be very careful, and I think, you know, the burden is on the state to make sure that you don't have an experienced police officer flagging for the jury, there was a polygraph technician involved in this police investigation, and we still thought that we should take him to trial on charges. And I think that's the reality of realizing it's not that any word, it's not about trying to get a perfect trial, and it's not about one word causing an automatic mistrial. This is about all of the subtle assumptions that polygraph evidence carries. So the problem in this case, it's not just that the word polygraph came up, it's that it came up in a way which suggests that a polygraph was involved in the police investigation. But we didn't know if the jurors would use that to speculate if he'd refused the polygraph, or they did in some way failed it. All we know is that there's this very awkward exchange where the prosecutor asks about a specific meeting, has to interrupt his witness when she says polygraph, and interrupts her again when he asks a follow-up question, and that's one of the last things the juror hears in this case. You know, I think the People v. Jackson is remarkable because it's a case that came after the case decided by the state, and in that case, you have a bench trial where you have the trial judge saying, I'm going to consider polygraph evidence, but I'm going to consider it for a limited purpose, and that purpose had nothing to do with guilt or innocence. And the Supreme Court reversed the resulting conviction because they said even though the trial judge, because they said that polygraph evidence was improperly admitted, the limited purpose was no good, and they rejected the idea that this admission for a limited purpose could be harmless and reversed due to the damage to the integrity of the judicial system. I think the Supreme Court repeatedly comes out very strongly in saying that when the state is going to offer any kind of polygraph evidence, they need to be very, very careful. In this case, we have a jury of women who are considering a credibility dispute in order to commit. You know, Mr. Mulvaney took the stand and he denied everything. He never confessed despite this polygraph, and there was no physical evidence. One of the last pieces of evidence that this jury hears is this awkward exchange in the rebuttal case. And I think that this brief reference lacked for the jurors that there was some sort of polygraph involved in the police investigation and the state proceeded to prosecute, and that may have subconsciously influenced the jurors' credibility determination. And with a mistake like that in a case like this where you don't have a confession and you don't have physical evidence, I think it's impossible to say that this improper evidence didn't have some effect. And as a result, we would ask that this court reverse this conviction and arrange for a new trial. Are there any further questions? No, I don't think so. You have the opportunity to do that. Thank you. Ms. Stacy, would you agree that a lay person, if they believe that someone took a polygraph and passed it, they probably won't be prosecuted? I cannot disagree with that. Okay. So would you also agree that if somebody, if a lay person believes that somebody took a polygraph and failed it or refused to take a polygraph, that they might infer some guilt on the basis of that? I would have to agree with that as well. And that's why we don't allow polygraph evidence. That's exactly right. And I think the case law completely backs up what you've asserted in that question. I think the difference is here, there's no evidence whatsoever anywhere in the record that the defendant was given a polygraph test, that he was offered a polygraph test, or that he refused a polygraph test. Those are the factors that come in when a trial court, when an appellate court determines that the word polygraphic test or polygraphic would – But wouldn't they infer that something happened with respect to a polygraph, or they wouldn't be talking about the polygraph agent or whatever it's called? I think the statement asked a question, not necessarily – I don't think the record even spells it out that the statement knew about a polygraph test. I think there was a question asked about a person who, in his capacity with the state police, was a polygraph expert. But I don't think the question was ever posed to bring that kind of a response. This case is somewhat similar to a Fourth District case that the state cited in its brief. That case is People v. Britt. And in that case, the witness referred to a polygraph. The defendant failed to make a timely objection, same as what we have here. The next morning, we move for a mistrial, same thing we have here. The trial court denied the motion, and the Fourth District affirmed. The court noted the defendant must demonstrate. It's not, as counsel suggests, that we can't be sure this didn't affect the jury. The case law says the defendant must demonstrate that the jury was so influenced and prejudiced by the introduction of improper evidence that it no longer could be fair and impartial. If the defense believes that there was really a polygraph test here, a motion in limine could have prevented that evidence from even coming in or a witness from even bringing them to work. In the Britt case, there was a motion in limine filed. The trial court cautioned the witnesses not to use that word. And even in spite of that, the Fourth District found there was no reversible error, even under the circumstances where the motion in limine was filed. Are you saying that we don't even know if there was a polygraph given in this case? My review of the record indicates that's not anywhere.  Not in the record. Okay. The word polygraphic is in the record. I have to agree with that. That is in the record. But what I'm saying is, apart from what happened at trial, we don't know whether or not there was a polygraph given? That is my recollection of the record in this case. We just have that word polygraphic used. The Fourth District in that Britt case noted, it's worth quoting, giving a witness the power to force a mistrial with the utterance of these words would destroy the trial court's ability to exercise its discretion in a matter. In this case, the other factor that comes in is the trial court offered the defense, would you like for me to admonish the jury about this? The defense said no, it would make a bigger deal out of it than it was. The trial court also asked the defense, well, do you want a jury instruction about this? That was denied as well. With respect to the Issue 1 of the defendant's brief, we ask you to affirm on that issue. I do want to touch on Issue 2, which is this new thing brought out in the reply brief that, in addition to an argument on a motion to sever, that the defendant says, well, he could have opted between Section 115-7.3 and 115-10. First of all, I haven't found a case anywhere reported that a defendant is allowed to choose between those two sections. Secondly, in both sections, a witness is required to come in and testify. In Section 115-10, the only way the witness doesn't come in and testify is if the witness is unavailable. There's a reason that the legislature came up with 115-7.3, and it's called the Propensity Statute. It comes in as aggravated criminal sexual abuse cases, among others. This is an aggravated criminal sexual abuse case. It's directly on point. It has never been argued in either the trial court or here that the trial court improperly granted the state's motion under the 7.3 section. In addition, even though the defense argues that this should have been severed, when the arguments are all boiled down, what it eventually will come down to is a harmless error analysis. And that is, the trial court here focused on 7.3, the state agrees that the trial court did. But in the Walston case that both parties cite, the court held that a trial court's failure to sever two sexual assaults was harmless error because evidence in both assaults would have been admissible in the separate trials. So it is clear in this case that evidence of the second sexual assault would have come in in the case regardless of whether or not they were severed. And in addition, the girls would still have to come in and testify twice if the counts were severed. I don't believe that the new argument of Section 115-10 overcomes that. The last thing I'd like to mention on 115-10 is there has to be a finding of reliability by the trial court, and that's under Section 115-10B1. That requires a trial court to find the time, content, and circumstances of an out-of-court statement, provide sufficient safeguards of reliability. I think that pretty much defeats that 115-10 argument that if he's saying, well, we could have waived the right to confront witnesses and just let these statements come in, again, there would still be the testimony, and there has to be a reliability finding. In this case – Was this closely balanced evidence, counsel? I'm sorry? Was this closely balanced evidence? I do not believe that it was closely balanced evidence. I would point out that both girls testified. The court found that there was very similar conduct with regard to both of these assaults. The trial court also noted – I believe it's at page 500 of the record – that the jury only took 30 minutes to come to a conclusion on this case. I would note that the defense wants to pass the burden off on the state, but under the plain error analysis on the motion to sever, the defendant bears the burden of showing clear, obvious error under either prong. He's arguing the first prong, but he has the burden to demonstrate that. Under the polygraph argument, the defendant must demonstrate the jury was so influenced and prejudiced by the introduction of improper evidence that it no longer could be fair and impartial. I think if the defense believed that, that this was such a bad word to come out and that it was going to ruin everything, that they could have asked for an admonishment to the jury or a jury instruction. That was not done here, and the people believed the evidence was very strong against the defendant and respectfully request you to affirm. Thank you. Thank you, Ms. Stacy. Thank you, Ms. O'Meara. Just very briefly on Issue 2, as far as there being clear and obvious error, if I'm not incorrect, the state just agreed that the court applied the 115-7.3 prejudice test. That's the wrong test for misjoiner, so that's the error. So then the question is, was the evidence close or was this second prong coming at the integrity of the trial? We've argued it's first prong due to the closeness of the evidence. The other thing I just want to comment on is I'm not asking for this court or suggesting that it's 115-7.3 versus 115-10. I'm suggesting that if this evidence of the other crimes comes in as propensity under Section 115-7.3, then you may not have to force the two girls to testify in both trials, because you could have used their hearsay evidence in the other trial if the defense was open to agreeing that it was reliable and waiving its confrontation clause rights, not that it's one or the other. Turning back to the polygraph issue, the polygraph is in the record. It's attached to the PSI. There's a police report that refers to the meeting with Mark Murphy. Counsel refers to this So Influence the Trial standard, which is in People v. Britt. And that standard actually comes from the case Turner, which itself relies on two Supreme Court cases from 1958 and 1962 for that standard for polygraph evidence. Those cases are so old that they predate People v. Baines, where the Supreme Court first started these cases where they said polygraph evidence is out. So I think that's an outdated standard, and that's not how you review the abuse of discretion when you're talking about polygraph evidence. We've learned a lot more about how much this influences jurors and how bad scientifically this evidence is. So I think that's an outdated standard. I also want to point out that Britt and Hartman and Escobar, the three cases, the rationale in those cases is that it was invited error from the defense. And there's also this concern that a witness is able to force a mistrial by just mentioning the word polygraph. But here, there's no suggestion that this was invited error. This came completely from the state. And you had an experienced police officer who was testifying to this. An experienced police officer has no desire to force a mistrial. If anything, like in Lewis, there's a suggestion that they might be able to get a little more bump into their case if they mention this word. And that's why I think the Lewis court said, well, we're not going to let this pass when it's coming from an experienced police officer. I think the same should hold true here. Counsel also referenced the fact that the jury finding only took 30 minutes. The problem with that is that it came after the suggestion of a polygraph. So the jury is being influenced by the suggestion that the prosecution is proceeding after a polygraph. You can't really trust they come to a credibility determination quickly because the whole problem is that we have an error going directly to the credibility determination that they're making. As far as the evidence being closely balanced, I think if you look at people v. Boland, you see, well, at a number of cases, you see that when there's a credibility issue at the heart of the case, that is closely balanced. In the Supreme Court cases, you have a police officer's testimony, two police officers' testimony against the defendant. And the court still recognizes that's closely balanced. Here, we have a credibility contest right at the heart of it. There's no physical evidence. There is no confession. And I think in that case, this is a clear-cut case of clearly balanced. We see the same analysis more recently in people v. Boland. Are there any other questions? Thank you. Thank you both for your briefs and your arguments. We'll take them in.